# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DOLORES STACHURSKI and BOB KRAVOS, on behalf of themselves and all others similarly situated, | ) ) ) ) | CASE NO. 1:08-CV-02850 |
| | ) | JUDGE SOLOMON OLIVER, JR. |
| Plaintiffs, | ) ) | **MEMORANDUM IN SUPPORT OF** |
| vs. | ) ) | **DIRECTV'S MOTION TO DISMISS OR STAY PROCEEDINGS PENDING** |
| DIRECTV, INC., | ) ) | **ARBITRATION AND TO COMPEL ARBITRATION, OR, IN THE** |
| Defendant. | ) ) | **ALTERNATIVE, TO DISMISS PLAINTIFFS' CLAIMS FOR** |
| | ) ) | **DECLARATORY JUDGMENT AND BREACH OF CONTRACT PURSUANT** |
| | ) ) | **TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION .................................................................................................1

II.    BACKGROUND ................................................................................................2

III.   THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS'
CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION
AGREEMENT. ...................................................................................................5

      A.     The Customer Agreement Governs The Relationship Between DIRECTV
And Plaintiffs. ...........................................................................................6

      B.     The Customer Agreement Between DIRECTV And Plaintiffs Contains An
Arbitration Clause. ....................................................................................7

      C.     Plaintiffs' Claims Against DIRECTV Are Covered By The Arbitration
Provision. ..................................................................................................7

      D.     The Arbitration Clause Is Binding And Enforceable.................................8

           1.     Plaintiffs did not lack a meaningful choice in their dealings with
DIRECTV. ....................................................................................10

           2.     The terms of the parties' arbitration agreement are not
unreasonably favorable to DIRECTV..........................................12

IV.   IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS'
CLAIMS FOR DECLARATORY RELIEF AND BREACH OF CONTRACT..............18

      A.     Plaintiffs' Claims For Declaratory Relief Should Be Dismissed Because
Their Claims Have Matured Into Causes Of Action For Alleged Past
Wrongs. ...................................................................................................18

      B.     Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because The
Complaint Fails To Identify Any Breach.................................................19

V.     CONCLUSION................................................................................................20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Arnold Corp.-Printed Commc'ns for Bus.*,
    920 F.2d 1269 (6th Cir.1990) ........................................................................ 5

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).......................................................................................... 8

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007)................................................................................... 19

*Bishop v. Lucent Techs., Inc.*,
    520 F.3d 516 (6th Cir. 2008) ........................................................................ 18

*Brown v. KFC Nat'l Mgmt. Co.*,
    921 P.2d 146 (Haw. 1996) ............................................................................ 17

*Burden v. Check Into Cash of Ky., LLC*,
    267 F.3d 483 (6th Cir. 2001) ........................................................................ 17

*Cirino v. Christian & Timbers, Inc.*,
    116 Ohio App. 3d 818, 689 N.E.2d 583 (1996)............................................. 7

*Collins v. Click Camera & Video, Inc.*,
    (1993), 86 Ohio App. 3d 826, 621 N.E.2d 1294................................... 9, 10, 12

*Conley v. Gibson*,
    355 U.S. 41 (1957)........................................................................................ 19

*Council of Smaller Enters. v. Gates, McDonald & Co.*,
    (1998), 80 Ohio St. 3d 661, 687 N.E.2d 1352 ............................................... 8

*Davis H. Elliot Co., Inc. v. Caribbean Utils. Co., Ltd.*,
    513 F.2d 1176 (6th Cir. 1975). ..................................................................... 18

*Eagle v. Fred Martin Motor Co.*,
    157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161................... 14, 15, 16

*Edelist v. MBNA Am. Bank*,
    790 A.2d 1249 (Del. Super. Ct. 2001) .......................................................... 17

*Ewers v. Genuine Motor Cars, Inc.*,
    No. 1:07 CV 2799, 2008 WL 755268 (N.D. Ohio Mar. 19, 2008).................... 5

*Green v. Ryan*,
    (1953), 95 Ohio App. 345, 119 N.E.2d 668.................................................... 18

*Harris v. DIRECTV Group, Inc.*,
    No. 07 C 3650, 2008 WL 342973 (N.D. Ill. Feb. 5, 2008)............................. 17

*Higgs v. Auto. Warranty Corp. of Am.*,
    134 Fed. Appx. 828 (6th Cir. May 13, 2005) ............................................. 6, 13

*Honig v. Comcast of Ga. I, LLC*,
    537 F. Supp. 2d 1277 (N.D. Ga.,2008) ........................................................ 17

*Howard v. Wells Fargo Minn., N.A.*,
    No. 1:06-CV-2821, 2007 WL 2778664 (N.D. Ohio Sept. 21, 2007)......................... 14, 16

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*,
    379 F.3d 159 (5th Cir. 2004) ...................................................................... 17

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
    400 F.3d 868 (11th Cir. 2005) .................................................................... 16

*Johnson v. Mobil Oil Corp.*,
    415 F. Supp. 264 (E.D. Mich. 1976)............................................................ 10

*Konica Minolta Bus. Solutions, U.S.A., Inc. v. Allied Office Prods., Inc.*,
    No. 2:06-cv-71, 2006 WL 3827461 (S.D. Ohio Dec. 27, 2006)......................... 2

*Liedtke v. Frank*,
    No. 1:05-CV-2990, 2006 WL 625730 (N.D. Ohio Mar. 10, 2006) .................... 6

*Meridian Mut. Ins. Co. v. Kellman*,
    197 F.3d 1178 (6th Cir. 1999) .................................................................... 14

*Moore v. Houses on the Move, Inc.*,
    177 Ohio App. 3d 585, 2008-Ohio-3552, 895 N.E.2d 579............................. 11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983).................................................................................... 5, 7

*Nat'l Check Bureau v. Buerger*,
    Lorain App. No. 06CA008882, 2006-Ohio-6673, 2006 WL 3702638............ 19

*Petty v. County of Franklin*,
    478 F.3d 341 (6th Ohio Cir. 2007) ............................................................. 18

*Price v. Taylor*,
    575 F. Supp. 2d 845 (N.D. Ohio 2008).................................................. 14, 17

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ................................................................................ 5

*Ranieri v. Bell Atl. Mobile*,
    759 N.Y.S.2d 448 (N.Y. App. Div. 2003) ........................................ 17

*Schwartz v. Alltel Corp.*,
    Cuyahoga App. No. 86810, 2006-Ohio-3353 ....................... 14, 15, 16

*Snowden v. CheckPoint Check Cashing*,
    290 F.3d 631 (4th Cir. 2002) ............................................................ 17

*Strand v. U.S. Bank Nat'l Ass'n ND*,
    693 N.W.2d 918 (N.D. 2005) ........................................................... 17

*Szymkowicz v. DIRECTV, Inc.*,
    No. Civ.A. 07-0581PLF, 2007 WL 1424652 (D.D.C. May 9, 2007) .............................. 17

*Taylor Bldg. Corp. of Am. v. Benfield*,
    117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12 ...................... 9

*Therapy Partners of Am., Inc. v. Health Providers, Inc.*,
    (1998), 129 Ohio App. 3d 572, 718 N.E.2d 518 .............................. 18

*Truitt v. DIRECTV, Inc.*,
    No. 08-3782, 2008 WL 5054570 (E.D. La. Nov. 21, 2008) ............. 17

*Vanyo v. Clear Channel Worldwide*,
    156 Ohio App. 3d 706, 2004-Ohio-1793, 808 N.E.2d 482 ........... 9, 10

*Vincent v. Neyer*,
    (2000), 139 Ohio App. 3d 848, 745 N.E.2d 1127 ............................ 11

**Statutes**

9 U.S.C. § 1 *et. seq.* (2008) ..................................................... 1, 5, 9

Ohio Revised Code § 1302.92(A) ..................................................... 19

**Other Authorities**

83 AM. JUR. PROOF OF FACTS 3D 1, § 72 (2008) ............................. 13

**Rules**

Federal Rule of Civil Procedure 8(a)(2) .......................................... 19

Federal Rule of Civil Procedure 12(b)(6) ...................................... 1, 2

# I.      INTRODUCTION

Four years after becoming DIRECTV subscribers, Plaintiffs Dolores Stachurski and Bob Kravos ("Plaintiffs")[1] decided to take advantage of a special offer to upgrade to new DIRECTV receiving equipment at no upfront charge.  DIRECTV confirmed in writing to Plaintiffs that the special offer required a new programming commitment (which carried a fee for early cancellation), and reminded Plaintiffs of their long-standing arbitration agreement with DIRECTV.  Weeks after receiving that letter, Plaintiffs went ahead and activated the new receiving equipment, and then terminated their service before the commitment term had ended.

Plaintiffs have now brought this lawsuit on behalf of themselves, and a putative class of Ohio consumers and businesses, challenging the fee Plaintiffs incurred when they breached their agreement with DIRECTV to purchase programming for a certain period of time.  But Plaintiffs cannot proceed in this Court because they contractually agreed to resolve all disputes with DIRECTV through binding arbitration.  The parties' arbitration agreement covers this dispute and is enforceable.  Therefore, under the Federal Arbitration Act (the "FAA"), 9 U.S.C. §§ 1-4 (2008), this Court should compel arbitration of Plaintiffs' claims, and because no claims against DIRECTV will remain to be litigated in this Court, Plaintiffs' Complaint should be dismissed.

Alternatively, if this Court declines to compel arbitration, the Court should dismiss Plaintiffs' claims for declaratory judgment and breach of contract because they do not state claims under Federal Rule 12(b)(6).  Declaratory relief is improper because Plaintiffs' claims, assuming the allegations are true, have matured into causes of actions for past wrongs.  Plaintiffs' breach of contract claim should also be dismissed because Plaintiffs do not identify

---

[1]  Though Ms. Stachurski and Mr. Kravos are both named plaintiffs, the DIRECTV account that is at issue in this case is only in Mr. Kravos' name.  *See* Declaration of Valerie McCarthy, filed concurrently ("McCarthy Decl.") ¶ 5.  DIRECTV refers collectively to Ms. Stachurski and Mr. Kravos as "Plaintiffs" in this brief for ease of reference, but reserves its right to raise Ms. Stachurski's lack of standing to sue.  Unless otherwise noted, all emphasis is added and internal citations are omitted in this memorandum.

the contract or any contractual provision that DIRECTV has supposedly breached.

This Court should grant DIRECTV's Motion and prevent Plaintiffs from pursuing claims in this Court that they agreed to resolve in arbitration, or, alternatively, dismiss those claims for which no relief can be granted.

## II.    BACKGROUND

To obtain digital television services from DIRECTV, a potential subscriber first acquires, typically from DIRECTV or a retailer, the equipment necessary to receive DIRECTV's satellite signal.  *See* McCarthy Decl. ¶ 2.[2]  The potential customer may then become a subscriber by electing to receive various of DIRECTV's services.  After the equipment is installed, DIRECTV activates the subscriber's services, and the customer begins to receive programming.  *Id.*

The relationship between DIRECTV and each customer is governed by a written contract (the "Customer Agreement") that is made available on DIRECTV's website and is then mailed to each customer along with his or her first billing statement.  *Id.* ¶ 3.  The Customer Agreement sets forth the parties' rights and obligations and explains the terms and conditions of subscribing to DIRECTV services.  *Id.*

Plaintiffs began subscribing to DIRECTV's services on or about January 20, 2004, at which time DIRECTV's Customer Agreement was available on DIRECTV's website, www.directv.com.  *Id.* ¶ 5.  DIRECTV mailed Plaintiffs their first billing statement on or about January 21, 2004, and included with their first statement a copy of the DIRECTV Customer Agreement then in effect.  *Id.* ¶ 5, Ex. A (2001 Customer Agreement).  Plaintiffs' Customer

---

[2]  The McCarthy Declaration supports DIRECTV's Motion to Compel Arbitration.  *See Konica Minolta Bus. Solutions, U.S.A., Inc. v. Allied Office Prods., Inc.*, No. 2:06-cv-71, 2006 WL 3827461, at *11 n.9 (S.D. Ohio Dec. 27, 2006) (noting that "it is 'proper (and in fact necessary) to consider such extrinsic evidence' when considering a motion to stay pending arbitration").  All Exhibits cited in this brief will refer to those exhibits attached to the McCarthy Declaration.  DIRECTV's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is based solely on the inadequacy of Plaintiffs' Complaint.

2

Agreement with DIRECTV specified that Plaintiffs would accept its terms by continuing to accept, and not canceling, DIRECTV's services.  Ex. A, Introduction.  The Customer Agreement further provided that it could be replaced by subsequent, updated Customer Agreements, and that Plaintiffs would accept the updated terms of any subsequent Customer Agreements in the same manner—by continuing to accept DIRECTV services.  *Id.*, § 4 ("Changes in Contract Terms"). Plaintiffs' Customer Agreement with DIRECTV also contained an arbitration provision.  *Id.*, § 8 ("Resolving Disputes").  After receiving the Customer Agreement, Plaintiffs did not dispute any of its terms or conditions and did not cancel their DIRECTV services.  McCarthy Decl. ¶ 5.

Over the next several years, Plaintiffs received updated Customer Agreements in October 2004 and May 2006, along with their October 21, 2004 and May 21, 2006 billing statements.  *Id.* ¶ 6, Ex. B (2004 Customer Agreement); Ex. C (2006 Customer Agreement).  These updated Customer Agreements also contained arbitration provisions substantially similar to the 2001 Customer Agreement.  Ex. B, § 9 ("Resolving Disputes"); Ex. C, § 9 ("Resolving Disputes"). After receiving the 2004 and 2006 Customer Agreements, Plaintiffs neither disputed any of their terms or conditions, nor canceled their DIRECTV services.  McCarthy Decl. ¶ 6.

In May of 2007, Plaintiffs received an updated DIRECTV Customer Agreement with their monthly billing statement.  *Id.* ¶ 6, Ex. D (2007 Customer Agreement).  Like its predecessors, the 2007 Customer Agreement made clear how plaintiffs would accept the updated agreement—by continuing to accept service from DIRECTV:

> **THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS OF YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE AND IS SUBJECT TO ARBITRATION (SECTION 9).  IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND THEY WILL BE LEGALLY BINDING.**

Ex. D, Introduction (bold/capital emphasis in original). After receiving the 2007 Customer Agreement, Plaintiffs did not dispute its terms or conditions or cancel their DIRECTV services. McCarthy Decl. ¶ 6. The 2007 Customer Agreement contains substantially the same arbitration provision to which the Plaintiffs previously agreed, requiring them to arbitrate "any legal or equitable claim relating to this Agreement, any addendum, or your Service" (*id.* ¶ 6; Ex. D, § 9 ("Resolving Disputes"), and to arbitrate these claims on an individual basis. Ex. D, § 9(c)(ii) ("Neither you nor we shall be entitled to join or consolidate claims . . . as a representative member of a class."). The Customer Agreement further provides that the arbitration provision "shall be governed by the Federal Arbitration Act." *Id.* § 10(b).

After four years of subscribing to DIRECTV services, and agreeing to the terms and conditions of receiving those services, Plaintiffs decided to take advantage of a special offer to upgrade to new receiving equipment. McCarthy Decl. ¶ 7. In February 2008, Plaintiffs placed an order with DIRECTV for two new receivers, at no upfront charge (other than shipping). *Id.* DIRECTV then confirmed Plaintiffs' order by letter on or about February 11, 2008. *Id.* In the order confirmation letter, DIRECTV confirmed that the special offer required Plaintiffs to enter into a new programming commitment agreement, and explained the fee that may be incurred if the commitment is not fulfilled. *Id.*; Ex. E. In addition, DIRECTV reminded Plaintiffs of their arbitration agreement. McCarthy Decl. ¶ 7; Ex. E. Almost a month later, Plaintiffs decided to go ahead and activate these new receivers on their DIRECTV account. McCarthy Decl. ¶ 7. However, Plaintiffs later decided not to fulfill their programming commitment and instead canceled their DIRECTV service on May 12, 2008. *Id.*

Because Plaintiffs canceled their service before fulfilling their programming commitment agreement associated with the two new receivers they got from DIRECTV, DIRECTV assessed

Plaintiffs a prorated early cancellation fee as contemplated by Section 5(b) of the Customer

Agreement. *Id.* ¶ 8; Ex. D, § 5(b).  On December 4, 2008, Plaintiffs filed a putative class action

complaint against DIRECTV in this Court, disregarding their agreement to arbitrate disputes like

this one.

### III.  THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS IN ACCORDANCE WITH THE PARTIES' ARBITRATION AGREEMENT.

Because the  FAA reflects a strong policy favoring arbitration of disputes, arbitration

provisions governed by the FAA are to be liberally enforced.  *See Moses H. Cone Mem'l Hosp.*

*v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA is "a congressional

declaration of a liberal federal policy favoring arbitration agreements").  Section 3 of the FAA

provides that, when a plaintiff sues "upon any issue referable to arbitration under an agreement

in writing for such arbitration," the court "shall" stay the action until arbitration has been had in

accordance with the terms of the parties' agreement. *See* 9 U.S.C. § 3.  Although Section 3

refers to staying proceedings, "where there is 'nothing left for the district court to do but execute

judgment,' dismissal is appropriate."  *Ewers v. Genuine Motor Cars, Inc.*, No. 1:07 CV 2799,

2008 WL 755268, at *7 (N.D. Ohio Mar. 19, 2008) (quoting *Arnold v. Arnold Corp.-Printed*

*Commc'ns for Bus.*, 920 F.2d 1269 (6th Cir.1990)) (dismissing Plaintiffs' claims "in deference to

arbitration").  Section 4 of the FAA, in turn, empowers the Court to compel arbitration according

to the parties' agreement.  *See* 9 U.S.C. § 4.

When a contract contains an arbitration clause and the dispute comes within the scope of

that clause, a federal court must compel arbitration and dismiss or stay the action pending

arbitration, unless the party opposing arbitration proves that the agreement is unenforceable.  *See*

9 U.S.C. §§2-4; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967).

Here, the contract between DIRECTV and Plaintiffs contains an agreement to arbitrate, and

Plaintiffs' claims come within the provision's broad scope.  Because the agreement is valid and enforceable, this Court should compel arbitration and dismiss or stay these proceedings.

> **A.    The Customer Agreement Governs The Relationship Between DIRECTV And Plaintiffs.**

An agreement that becomes effective when the customer opts to continue accepting service after receiving the agreement is binding under Ohio law.  *See Liedtke v. Frank*, No. 1:05-CV-2990, 2006 WL 625730, at *4-5 (N.D. Ohio Mar. 10, 2006) (under Ohio law, where contract provided that continued use of services would bind a party to the stated terms, and where party had opportunity to cancel after receiving the contract, continuing in the contractual relationship manifested assent to be bound by the terms of the contract, including arbitration provision).  The Sixth Circuit has recognized the prevalence of this "accept-or-return" contract formation:  "The 'accept-or-return' mechanism to contract formation has been enforced by courts, including in contexts involving the sale of products and services by mail and telephone, software licensing and sales, mobile telephone service agreements, *satellite television agreements*, credit card agreements, and bank account agreements."  *Higgs v. Auto. Warranty Corp. of Am.*, 134 Fed. Appx. 828, 831 (6th Cir. May 13, 2005) (enforcing arbitration provision in a service warranty contract sent to plaintiff on the ground that "he kept the warranty, thereby assenting to its terms, including the arbitration provision").

Plaintiffs were DIRECTV customers for over four (4) years, from 2004 to 2008.  Compl. ¶ 4.  Their Customer Agreement was mailed to them with their first bill, and then each time DIRECTV updated the Customer Agreement, the updated version was also provided to Plaintiffs.  *See* McCarthy Decl. ¶¶ 5-6.  Plaintiffs were bound by the terms and conditions of their original Customer Agreement, and then each updated version, because they continued to accept DIRECTV's service.  *Id*. ¶¶ 5-6.  Accordingly, Plaintiffs' 2007 Customer Agreement

6

governed the parties' relationship at the time Plaintiffs canceled service in May 2008, and

governs this dispute.  *See* Ex. D, Introduction.

### B.   The Customer Agreement Between DIRECTV And Plaintiffs Contains An Arbitration Clause.

Plaintiffs' 2007 Customer Agreement with DIRECTV contains an arbitration provision,

which is set-off in its own separate paragraph beneath the bold-print, capital letter heading

"**RESOLVING DISPUTES,**" and provides that all disputes "relating to" the Customer

Agreement or to DIRECTV services, and not resolved informally, are subject to binding

arbitration:

> In order to expedite and control the cost of disputes, you and we
> agree that any legal or equitable claim relating to this Agreement,
> any addendum, or your Service (referred to as a "Claim") will be
> resolved as follows:
> . . .
> [I]f we cannot resolve a Claim informally, any Claim either of us
> asserts will be resolved only by binding arbitration.  The
> arbitration will be conducted under the rules of JAMS that are in
> effect at the time the arbitration is initiated . . . and under the rules
> set forth in this Agreement.

*Id.* § 9.  Having shown the existence of an arbitration agreement, the next inquiry is whether

Plaintiffs' claims here fall within its scope.

### C.   Plaintiffs' Claims Against DIRECTV Are Covered By The Arbitration Provision.

Given the strong policy favoring arbitration, "any doubts concerning the scope of

arbitrable issues should be resolved in favor of arbitration."  *Moses H. Cone*, 460 U.S. at 24-25;

*see also Cirino v. Christian & Timbers, Inc.* (1996), 116 Ohio App. 3d 818, 821, 689 N.E.2d 583

(recognizing "strong presumption" in favor of arbitration and holding that an arbitration clause

should be enforced "unless it may be said with positive assurance that the subject arbitration

clause is not susceptible [of] an interpretation that covers the asserted dispute").  The arbitration

clause here extends to "any legal or equitable claim relating to" the Customer Agreement, any addendum, or Plaintiffs' DIRECTV services.  Ex. D, § 9.  When parties use such expansive phrasing, "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail."  *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

Plaintiffs' claims here relate to both their Customer Agreement and their DIRECTV Service.  First, Plaintiffs allege that DIRECTV's assessment, collection, or "imposition" of early cancellation fees violate the Deceptive Trade Practices Act ("DTPA") and Consumer Sales Practices Act ("CSPA"), and/or constitute unjust enrichment, a breach of contract, and an unlawful liquidated damages assessment.  *See, e.g.*, Compl. ¶¶ 35, 44, 53, 59, 62.  These claims "relate to" the Customer Agreement because the Agreement includes a section related to the cancellation of service, which explains that Plaintiffs can be charged an early cancellation fee.  *See* Ex. D, § 5(b).  Second, Plaintiffs' claims also "relate to" their  DIRECTV service because, among other reasons, it was Plaintiffs' cancellation of their DIRECTV programming service that triggered the assessment of a cancellation fee.  Plaintiffs also seek declaratory relief about the rights and obligations under the Customer Agreement (Compl. ¶¶ 50, 68), a claim which, by its very nature, "relates to" the Agreement.  Because the claims in Plaintiffs' Complaint "relate to" their DIRECTV service and their Customer Agreement, the claims fall within the scope of the parties' arbitration agreement.

**D.  The Arbitration Clause Is Binding And Enforceable.**

Once the arbitration proponent has established that there is a valid arbitration agreement and that the dispute comes within the agreement's scope, the party opposing arbitration has the burden to prove why the matter should not be arbitrated.  *Council of Smaller Enters. v. Gates, McDonald & Co.* (1998), 80 Ohio St. 3d 661, 667-68, 687 N.E.2d 1352 (party opposing arbitration must provide forceful evidence that the parties' agreement to arbitrate is invalid); *see*

8

*also Vanyo v. Clear Channel Worldwide*, 156 Ohio App. 3d 706, 2004-Ohio-1793, 808 N.E.2d

482, at ¶ 8 ( "A presumption favoring arbitration arises when the claim in dispute falls within the

scope of the arbitration provision . . . and, with limited exceptions, such an agreement is to be

upheld just as any other contract.").  The FAA is clear that arbitration agreements may not be

judged more harshly than other contracts.  Thus, arbitration provisions will be enforced unless

they are invalid under state law principles of contract formation applicable to *all* contracts.  *See* 9

U.S.C. § 2 (arbitration agreements are "valid, irrevocable, and enforceable, save upon such

grounds as exist at law or in equity for the revocation of any contract").

      In this case, the parties agreed that the law of the state in which Plaintiffs received service

would govern the Customer Agreement.  *See* Ex. D, § 10(b) (providing that contract is governed

by "applicable federal laws, and the laws of the state and local area where Service is provided to

you").  Because Plaintiffs are Ohio residents and received DIRECTV service in Ohio (Compl. ¶

4; McCarthy Decl. ¶ 5), Ohio law governs the enforceability of the arbitration agreement.

      Plaintiffs assert that the arbitration provision contained in their Customer Agreement is

unenforceable because it is "unconscionable and unlawful."  Compl. ¶ 68.  Under Ohio law, a

party seeking to avoid obligations under a contract on unconscionability grounds must show both

"an absence of meaningful choice on the part of one of the parties together with the contract

terms which are unreasonably favorable to the other party."  *Taylor Bldg. Corp. of Am. v.*

*Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶ 34.  The party "must allege

and prove a 'quantum' of *both* procedural and substantive unconscionability."  *Collins v. Click*

*Camera & Video, Inc.* (1993), 86 Ohio App. 3d 826, 834, 621 N.E.2d 1294.  Plaintiffs cannot

meet this burden.

1. **Plaintiffs did not lack a meaningful choice in their dealings with DIRECTV.**

To establish procedural unconscionability, a party must show that it lacked "meaningful choice" or, in other words, had no real option *but* to enter into the contract in question. *Id.* at 834. Under Ohio law, several factors may be relevant to this determination, including: "'age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, [and] whether there were alternative sources of supply for the goods in question.'" *Id.* (quoting *Johnson v. Mobil Oil Corp.*, 415 F. Supp. 264, 268 (E.D. Mich. 1976)). The "crucial question" for the Court, then, is whether "each party to the contract, considering his obvious education or lack of it, [had] a reasonable opportunity to understand the terms of the contract, or were the important terms hidden in a maze of fine print?" *Vanyo* at ¶ 18.

Here, there is no indication that Plaintiffs' age, education, intelligence, or business experience contributed to any lack of meaningful choice in their decision to select DIRECTV as their television programming provider and accept the terms and conditions of that service. Millions of people accept customer agreements (including arbitration clauses) every day without advanced degrees, representation by counsel, or other assistance.

Plaintiffs here had the opportunity to review the terms of the Customer Agreement in January 2004, both on DIRECTV's website and with their billing statement, and could have chosen to subscribe to a different television service if they did not want to agree to the terms, including the arbitration agreement. *See Collins*, 86 Ohio App. 3d at 836 (finding no procedural unconscionability where there were "certainly other places" plaintiff could have taken his business if he was unsatisfied with the terms of the contract at issue). Plus, even if Plaintiffs assert they did not review the terms of the Customer Agreement either on the website or on or

10

after DIRECTV sent it to them, they may not avoid their agreement to arbitrate by claiming

ignorance of the arbitration provision or by claiming that they now reject it in hindsight. *See*

*Moore v. Houses on the Move, Inc.*, 177 Ohio App. 3d 585, 2008-Ohio-3552, 895 N.E.2d 579, at

¶ 27-28 (rejecting the plaintiff's claim that she did not read or understand that she was required

to arbitrate all disputes, holding that "[a] party entering a contract has a responsibility to learn the

terms of the contract prior to agreeing to its terms" and "[t]he law does not require that each

aspect of a contract be explained orally to a party . . . ."); s*ee also Vincent v. Neyer* (2000), 139

Ohio App. 3d 848, 855-56, 745 N.E.2d 1127 (finding no unconscionability and enforcing

arbitration provision where consumers failed to read entire contract and were unaware that it

contained an arbitration clause). Plaintiffs had an opportunity before and at the time they chose

DIRECTV service to read the arbitration agreement and reject it, but Plaintiffs instead decided to

continue receiving service and accept it.

Finally, DIRECTV did not hide the arbitration provision in a "maze of fine print," nor

did it hide that failing to immediately cancel, and instead accepting DIRECTV's services, meant

accepting the terms of the Customer Agreement, which included the arbitration provision.

*Taylor Bldg.* at ¶ 46 (finding no procedural unconscionability where clause appeared in standard

print, was not hidden, and consumer was not rushed into decision). To the contrary, the

arbitration provision in Plaintiffs' Customer Agreement with DIRECTV has always been set off

in its own section under the capitalized, bolded, stand-alone heading "**RESOLVING**

**DISPUTES.**" This section has also always emphasized in capitalized, bolded lettering, the

meaning of the arbitration agreement: "**ARBITRATION MEANS THAT YOU WAIVE**

11

**YOUR RIGHT TO A JURY TRIAL**.”  *See* Exs. A § 8(b), B § 9(b), C § 9(b), D § 9(b).[3]  And

the Customer Agreement explicitly notified Plaintiffs, again in capitalized, bolded lettering, that

if they did not want to be bound by its terms, they needed to notify DIRECTV immediately so

that their service could be canceled.  *See* Ex. A, Introduction.  But Plaintiffs chose to continue

accepting DIRECTV’s service, for over four years, and were legally bound to the terms and

conditions of their Customer Agreement, as amended.  *See id.*;  *see also* Exs. B, C, D

(Introductions).

Plaintiffs agreed to arbitrate their disputes with DIRECTV by choosing to continue

receiving DIRECTV services after they had a chance to review the contract terms.  *See Higgs*,

134 Fed. Appx. at 831; *Liedtke*, 2006 WL 625730 at *4-5.  Because the arbitration clause at issue

here is not procedurally unconscionable, and because both procedural and substantive

unconscionability must be shown to avoid the arbitration agreement, the Court can reject

Plaintiffs’ unconscionability argument on this ground alone.

> **2.**      **The terms of the parties’ arbitration agreement are not unreasonably favorable to DIRECTV.**

To prove that a contract provision is substantively unconscionable, the party challenging

enforceability must establish that the provision is unreasonably favorable to the other party, or

“commercially unreasonable” in a consumer context.  *Collins*, 86 Ohio App. 3d at 834.  There is

no one test for substantive unconscionability, as courts must consider the circumstances of each

case.  *Id.*  However, Ohio courts often look at factors such as: (1) the fairness of the terms, (2)

---

[3]  Plaintiffs were also reminded of their arbitration agreement in February 2008 when they received the letter confirming their order of two new receivers, which was weeks before Plaintiffs voluntarily activated those new receivers.  *See* Ex. E (“You and DIRECTV agree that any dispute arising under or relating to your agreements or service with DIRECTV . . . will be resolved through binding arbitration as fully set forth in your DIRECTV Customer Agreement . . . .”).

the charge for the service in question, (3) the applicable industry standard, and (4) the ability to accurately predict the extent of future liability.  *See id.*

Here, the parties' arbitration provision is commercially reasonable.  First, the terms of the provision are fair—not extreme or one-sided.  The arbitration agreement mutually binds both DIRECTV and Plaintiffs to arbitrate on an individual basis all claims that arise between them. *See* Ex. D, § 9(b) ("You and we agree that . . . if we cannot resolve a claim informally, any Claim either of us asserts will be resolved only by binding arbitration.").  Second, the arbitration agreement defrays the costs of arbitration for the customer, ensuring that he or she will pay no more than a maximum $125 filing fee, if that.  *See id.*  It also ensures that the arbitration is convenient and affordable to attend by providing that the arbitration take place in the customer's hometown area and be governed by the laws of the customer's home state.  *Id.* §§ 9(b), 10(b). Third, arbitration clauses have become standard in consumer contracts in the telecommunications industry and other consumer contexts.  *See* 83 AM. JUR. PROOF OF FACTS 3D 1, § 72 (2008) ("Arbitration is often incorporated into consumer, employment, health care, franchise, banking, credit card, financial, insurance, telecommunication service agreements and other contracts. Yet most of these agreements do not involve arm's-length negotiation but, realistically and properly, are on a take-it-or-leave-it basis."); *see also Higgs*, 134 Fed. Appx. at 831 (noting that many courts recognize "accept-or-reject" formation and applying that analysis to an arbitration agreement); *see also infra* n.6 (citing various orders enforcing similar arbitration clauses in consumer agreements).  Finally, Plaintiffs had the ability to accurately predict future liabilities as a result of agreeing to arbitrate because the arbitration clause caps their costs at $125.  And to the extent Plaintiffs incur attorneys' fees in connection with arbitrating disputes, they may still seek recovery of those fees, just as they would in court, since the arbitration clause does not limit a

13

consumer's potential remedies.  *See* Ex. D, § 9.  All of these factors demonstrate that the parties' arbitration agreement is commercially reasonable and not substantively unconscionable under Ohio law.

Plaintiffs, however, will likely argue that the arbitration clause is substantively unconscionable because the parties agreed to individual, not class, arbitration.  The Ohio Supreme Court has not yet ruled on class action waivers in arbitration agreements.  When federal courts are deciding an issue governed by Ohio law and the Ohio Supreme Court has not spoken on the subject, the federal courts must attempt to decide the case as they believe the Ohio Supreme Court would.  *See Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999).  In doing so, the federal court should consider other Ohio state cases, federal decisions, decisions of other states, and the general weight and trend of authority.  *See id.*

There are four decisions addressing arbitration clauses with class action waivers under Ohio law, two from Ohio state appellate courts, and two more recent decisions in the Northern District of Ohio.  *See Price v. Taylor*, 575 F. Supp. 2d 845 (N.D. Ohio 2008); *Howard v. Wells Fargo Minn., N.A.*, No. 1:06-CV-2821, 2007 WL 2778664 (N.D. Ohio Sept. 21, 2007); *Schwartz v. Alltel Corp.*, Cuyahoga App. No. 86810, 2006-Ohio-3353; *Eagle v. Fred Martin Motor Co.*, 157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161.  The discussion of each case below demonstrates that because the class action waiver alone will not render an arbitration agreement unenforceable, and because Plaintiffs' arbitration agreement with DIRECTV does not contain the indicia of unconscionability that were present in *Schwartz* and *Eagle*, this Court should instead follow the reasoning in *Price* and *Howard* and enforce the parties' agreement to arbitrate.

The earliest of the cases is *Eagle*, where a consumer brought a putative class action against a car dealership, alleging deceptive sales practices under the CSPA.  *See Eagle* at ¶¶ 2-5.

There, the cost of arbitrating was substantially higher than filing a court action, and would have required the consumer to spend thousands of dollars to have her claim heard.  *See id.* at ¶¶ 37-51. Moreover, these costs were not disclosed within the terms of the arbitration provision, so the consumer had no opportunity to make an educated decision about entering into the arbitration agreement.  *See id.*  The court found that the "arbitration costs and fees are prohibitive, unreasonable, and unfair . . . [and] *based on these prohibitive costs alone*, the arbitration clause in general is substantively unconscionable."  *Id.* at ¶ 51.  The court later noted that the secrecy clause, class action waiver, and private attorney general waiver in the arbitration provision added to the substantive unconscionability of the provision, but based this finding on the fact that individual claims in arbitration may be cost prohibitive.  *Id.* at ¶¶ 73-74.  Here, however, that is not the case because DIRECTV pays all of the costs of the arbitration, except a filing fee of no more than $125.  Thus, because Plaintiffs here do not risk incurring excessive costs if they arbitrate this dispute, Plaintiffs' arbitration agreement with DIRECTV does not raise the same concerns as in *Eagle*.

The next case, *Schwartz*, involved a CSPA and fraudulent inducement claim made by a consumer against a wireless phone provider.  The court held that the arbitration agreement was substantively unconscionable because it "eliminates the right to proceed through a class action *and* prohibits an award of attorney fees that are statutorily authorized . . . ."  *Schwartz* at ¶ 29.[4] Because the ability to recover a statutorily authorized fee award in arbitration is an important incentive to individuals and counsel in bringing such claims, this is a critical distinction between

---

[4] The *Schwartz* court based its procedural unconscionability finding on the fact that the arbitration provision was "at the very bottom of the back side of the agreement, without calling any attention to the provision."  *Id.* at ¶ 34. Plaintiffs' arbitration agreement here, on the other hand, is in bold and capitalized lettering.  Ex. D, Intro and § 9(b). Thus, even if *Schwartz*'s substantive unconscionability finding held any weight here, the parties' agreement would nevertheless be upheld because a "quantum" of *both* procedural and substantive unconscionability is required. *Schwartz* at ¶ 24.

*Schwartz* and the arbitration agreement between DIRECTV and Plaintiffs.  *See Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 878 (11th Cir. 2005) (observing that statutes providing for recovery of attorneys' fees offer plaintiffs "effective access to the judicial process" and that class action waivers "do not 'necessarily choke off the supply of lawyers willing to pursue claims'" when there is an opportunity to recover attorneys' fees).  Because Plaintiffs' arbitration agreement with DIRECTV limits Plaintiffs' costs to no more than $125, and permits Plaintiffs to seek the same remedies they could seek in court, neither *Eagle* nor *Schwartz* supports a finding of substantive unconscionability here, let alone one sufficient to justify allowing Plaintiffs to avoid their agreement.

More recently, the Northern District of Ohio upheld the enforceability of a class action waiver under Ohio law.  *See Howard*, 2007 WL 2778664.  In *Howard*, the plaintiff claimed that Wells Fargo violated an Ohio statute by failing to timely record satisfaction of a mortgage.  *Id.* at *2.  The parties' contract contained an arbitration provision with a class action waiver.  *Id.*  The plaintiff claimed that the waiver was unconscionable and frustrated the remedial purpose of the statute on which she based her claims.  *Id.*  The court, however, found that the waiver of class actions did not deprive the plaintiff of her remedies.  *Id.* at *4.  To the contrary, the court held that the plaintiff was "only limited to the forum in which she may establish her right to relief." *Id.*  Significantly, the plaintiff cited to both *Eagle* and *Schwartz* for the proposition that Ohio courts have refused to enforce arbitration agreements containing class action waivers.[5]  But the court did not apply these cases and instead found the agreement enforceable, even if the costs could exceed the remedy, because the plaintiff could "vindicate her rights" in arbitration.  *Id.* at

---

[5] *See* Plaintiff's Brief in Opposition to Defendant's Motion to Stay Court Proceedings and to Dismiss Class Action Claims at 18, *Howard v. Wells Fargo Minn., N.A.*, No. 1:06-CV-2821, 2007 WL 2778664 (N.D. Ohio Sept. 21, 2007), 2007 WL 1095341.

*5.

Finally, the Northern District of Ohio last year in *Price v. Taylor* again enforced an arbitration agreement with a class action waiver.  In *Price*, the plaintiff brought Fair Housing Act and state law fraud, negligence, and breach of fiduciary duty claims against a mortgage lender, alleging that it illegally made her a loan she could not afford to repay.  *Price*, 575 F. Supp. 2d at 848.  The plaintiff claimed that the parties' arbitration agreement was unconscionable because it limited her ability to bring a class action, join in claims with others, or act as a private attorney general.  *Id.* at 854.  The court disagreed and upheld the arbitration provision, noting that "[a]n agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies."  *Id*.  The court further noted that the plaintiff did not identify any statutory remedies that would be unavailable to her in arbitration.  *Id*. at 855.  Similarly, here, Plaintiffs are not limited in the recovery they could obtain in arbitration.

Enforcing Plaintiffs' arbitration agreement with DIRECTV would be consistent with these four cases, as well as the general weight of authority in most jurisdictions.[6]  The parties' arbitration agreement does not impose burdensome costs, nor deprive Plaintiffs of statutory remedies; it merely selects the forum in which they may seek relief.

Plaintiffs entered into an agreement containing an arbitration clause that governs this dispute, and that arbitration agreement is neither procedurally nor substantively unconscionable.

---

[6]  *See, e.g., Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 174-75 (5th Cir. 2004) (applying FAA and Louisiana law); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002) (applying FAA and Maryland law); *Burden v. Check Into Cash of Ky., LLC*, 267 F.3d 483, 492 (6th Cir. 2001) (applying FAA and Kentucky law); *Truitt v. DIRECTV, Inc.*, No. 08-3782, 2008 WL 5054570 at *3 (E.D. La. Nov. 21, 2008) (applying FAA and Louisiana law); *Harris v. DIRECTV Group, Inc.*, No. 07 C 3650, 2008 WL 342973 at *5 (N.D. Ill. Feb. 5, 2008) (applying FAA and Illinois law); *Honig v. Comcast of Ga. I, LLC*, 537 F. Supp. 2d 1277 (N.D. Ga.,2008) (applying FAA and Georgia law); *Szymkowicz v. DIRECTV, Inc.*, No. Civ.A. 07-0581PLF, 2007 WL 1424652 at *2 (D.D.C. May 9, 2007) (applying FAA and District of Columbia law); *Edelist v. MBNA Am. Bank*, 790 A.2d 1249, 1261 (Del. Super. Ct. 2001) (applying FAA and Delaware law); *Brown v. KFC Nat'l Mgmt. Co.*, 921 P.2d 146, 166 n.23 (Haw. 1996) (applying FAA and Hawaii law); *Ranieri v. Bell Atl. Mobile*, 759 N.Y.S.2d 448, 449 (N.Y. App. Div. 2003) (applying FAA and New York law); *Strand v. U.S. Bank Nat'l Ass'n ND*, 693 N.W.2d 918, 926-27 (N.D. 2005) (applying North Dakota law).

Accordingly, this Court should grant DIRECTV's motion and compel this dispute to arbitration in accordance with the parties' contract.

## IV.  IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF AND BREACH OF CONTRACT.

If this Court declines to compel arbitration, Plaintiffs' claims for declaratory relief and breach of contract should be dismissed because they fail to state claims upon which relief can be granted.  When hearing a motion to dismiss under Rule 12 (b)(6), the Court's function is "to test the sufficiency of the pleading." *Davis H. Elliot Co. v. Caribbean Utils. Co.*, 513 F.2d 1176, 1182 (6th Cir. 1975).  In doing so, the Court presumes the truth of "all well-pled factual allegations" in the complaint, but "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008).  Dismissals under Rule 12(b)(6) are generally made with prejudice.  *See Petty v. County of Franklin, Ohio*, 478 F.3d 341, 346 n.3 (6th Cir. 2007).

### A.  Plaintiffs' Claims For Declaratory Relief Should Be Dismissed Because Their Claims Have Matured Into Causes Of Action For Alleged Past Wrongs.

Declaratory judgment serves to "ascertain the rights of the parties before either a cause of action has matured or before an adverse party files suit." *Therapy Partners of Am., Inc. v. Health Providers, Inc.* (1998), 129 Ohio App. 3d 572, 579, 718 N.E.2d 518.  Declaratory relief is not a proper remedy where the claimant is "seeking present relief based on alleged matured existing rights." *Green v. Ryan* (1953), 95 Ohio App. 345, 348-49,119 N.E.2d 668.  Declaratory relief may in some cases be appropriate where there is a fully "matured" claim, but only as to the rights of third parties to the contract (such as insurers), not in an "action between the parties themselves." *Therapy Partners*, 129 Ohio App. 3d at 576.

Here, Plaintiffs' third and seventh causes of action seek declaratory relief on matters that have ripened into causes of action (however meritless, in DIRECTV's view) for alleged

18

violations of the DTPA and CSPA, and for Breach of Contract, Unlawful Assessment of

Liquidated Damages, and Unjust Enrichment.  Plaintiffs' Complaint asserts independent claims

for relief under each of these causes of action.  *See* Compl. ¶¶ 34-70.  For example, Plaintiffs'

DTPA and CSPA claims allege that DIRECTV unlawfully charged them early cancellation fees.

*Id*. ¶¶ 34-48.  Plaintiffs then seek declaratory relief regarding the exact same issue.  *Id.* ¶ 66(a).

Similarly, Plaintiffs' claim under § 1302.92(A) of the Ohio Revised Code alleges that the early

cancellation fee DIRECTV charged Plaintiffs "is an unlawful liquidated damages provision."

Compl. ¶¶ 62-63.  Their subsequent request that the Court declare DIRECTV's early cancellation

fees to be "unlawful liquidated damages provision[s]" is therefore unnecessary, as it is a claim

for relief regarding past events.  *Id.* ¶ 66(b).  Similarly, declarations regarding the enforceability

of the arbitration provision will be addressed in response to DIRECTV's motion to compel

arbitration, so the separate claim for declaratory relief is, again, not necessary.  *Id*. ¶¶ 68-70.

### B.  Plaintiffs' Breach Of Contract Claim Should Be Dismissed Because The Complaint Fails To Identify Any Breach.

To survive a motion to dismiss, a complaint must "give the defendant fair notice of what

the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 127 S. Ct.

1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); Fed. R. Civ. P. 8(a)(2).

Satisfying this standard "requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do."  *Twombly*, 127 S. Ct. at 1965.  Rather, the plaintiff

must plead facts that "raise a right to relief above the speculative level."  *Id.*  To state a claim for

breach of contract under Ohio law, a plaintiff must allege "[t]he terms of the contract, the

performance by the plaintiff of his obligation, the breach by the defendant, consideration and

damages."  *Nat'l Check Bureau v. Buerger*, Lorain App. No. 06CA008882, 2006-Ohio-6673, at

¶ 17 (applying this test to whether breach of contract adequately pled).

19

Here, instead of setting forth the "terms of the contract", Plaintiffs spend most of their Complaint arguing that there is no enforceable contract with DIRECTV. They later leap to the conclusion that DIRECTV breached this (apparently unenforceable) contract. Compl. ¶ 59 ("Defendant materially breached its duties under the agreement with Plaintiffs . . . by charging fees in addition to those as agreed to and required by the terms of their contract."). If it is Plaintiffs' position that there is a contract between the parties, they should identify the contract and the terms that DIRECTV supposedly breached. If the "contract" is the Customer Agreement, then plaintiffs need to allege it is an enforceable agreement and identify the provisions DIRECTV has breached. Instead, Plaintiffs vaguely complain that DIRECTV charged them an early cancellation fee without either contractual authorization or prohibition. *Id.* ¶¶ 57-59. While such allegations (however unfounded) may provide the basis to plead some other claim, they are insufficient to state a claim for breach of contract.

By failing to allege a single contract term that DIRECTV supposedly breached by imposing an early cancellation fee, Plaintiffs have provided DIRECTV with insufficient notice of the grounds on which this claim is based, and this claim should be dismissed.

## V.     CONCLUSION

Plaintiffs agreed to arbitrate, not litigate, the claims they assert here. Accordingly, under Sections 3 and 4 of the FAA, DIRECTV respectfully requests that the Court dismiss or stay this case and compel arbitration of Plaintiffs' claims. Should the Court decline to compel arbitration, Plaintiffs' claims for declaratory relief and breach of contract should be dismissed.

Respectfully Submitted,

/s/  Robyn E. Bladow
MELISSA D. INGALLS (Cal. Bar No. 174861)
ROBYN E. BLADOW (Cal. Bar No. 205189)
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Los Angeles, CA 90017
(213) 680-8400 (tel)
(213) 680-8500 (fax)
mingalls@kirkland.com
rbladow@kirkland.com

JAMES F. LANG (0059668)
PETER A. ROSATO (0068026)
FRITZ E. BERCKMUELLER (0081530)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
(216) 622-8200 (tel)
(216) 241-0816 (fax)
jlang@calfee.com
prosato@calfee.com
fberckmueller@calfee.com

Attorneys for Defendant DIRECTV, Inc.

21

**Certificate of Service**

I hereby certify that on January 29, 2009, a copy of the foregoing *Memorandum in Support of DIRECTV's Motion to Dismiss or Stay Proceedings Pending Arbitration and to Compel Arbitration or, in the Alternative, to Dismiss Plaintiffs' Claims for Declaratory Judgment and Breach of Contract for Failure to State Claims Pursuant to Federal Rule of Civil Procedure 12(b)(6)* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail.  Parties may access this filing through the Court's system.

Respectfully Submitted,

/s/    Robyn E. Bladow
MELISSA D. INGALLS (Cal. Bar No. 174861)
ROBYN E. BLADOW (Cal. Bar No. 205189)
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Los Angeles, CA 90017
(213) 680-8400 (tel)
(213) 680-8500 (fax)
mingalls@kirkland.com
rbladow@kirkland.com

JAMES F. LANG (Ohio Bar No. 0059668)
PETER A. ROSATO (Ohio Bar No. 0068026)
FRITZ E. BERCKMUELLER (Ohio Bar No. 0081530)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
(216) 622-8200 (tel)
(216) 241-0816 (fax)
jlang@calfee.com
prosato@calfee.com
fberckmueller@calfee.com

Attorneys for Defendant DIRECTV, Inc.

22