# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

DOLORES STACHURSKI and BOB
KRAVOS, on behalf of themselves and all
others similarly situated,

      Plaintiffs,

    vs.

DIRECTV, INC.,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CASE NO. 1:08-CV-02850

JUDGE SOLOMON OLIVER, JR.

**REPLY MEMORANDUM IN SUPPORT OF
DIRECTV'S MOTION TO DISMISS OR
STAY PROCEEDINGS PENDING
ARBITRATION AND TO COMPEL
ARBITRATION, OR, IN THE
ALTERNATIVE, TO DISMISS
PLAINTIFFS' CLAIMS FOR
DECLARATORY JUDGMENT AND
BREACH OF CONTRACT PURSUANT
TO FEDERAL RULE OF CIVIL
PROCEDURE 12(b)(6)**

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ........................................................................................................1

II.    THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS. ......................................................................................................................2

     A.     Plaintiffs Entered Into An Arbitration Agreement With DIRECTV When They Continued To Accept Service After Receiving The Customer Agreement.........................................................................................................2

     B.     The Parties' Arbitration Agreement Is Not Unconscionable Under Ohio Law. ...................................................................................................................4

          1.     The arbitration agreement is not procedurally unconscionable. .................4

          2.     The arbitration agreement is not substantively unconscionable. ................8

               a.     The parties' agreement to waive class action procedures does not render the arbitration clause substantively unconscionable. ...............................................................................8

               b.     Arbitration is not cost-prohibitive....................................................11

               c.     DIRECTV's arbitration agreement does not prevent litigants from bringing class actions in jurisdictions, unlike Ohio, that do not enforce the class action waiver. .........................12

III.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF AND BREACH OF CONTRACT FOR FAILURE TO STATE CLAIMS. .............................................................................14

     A.     Plaintiffs Have Not Stated A Claim For Declaratory Relief..................................14

     B.     Plaintiffs Have Not Stated A Claim For Breach Of Contract...............................15

IV.    CONCLUSION........................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................................................................... 15

*Burden v. Check Into Cash of Ky.*, LLC,
    267 F.3d 483 (6th Cir. 2001) ........................................................................................ 12

*Collins v. Click Camera & Video, Inc.,*
    (1993), 86 Ohio App. 3d 826, 621 N.E.2d 1294 ......................................................... 4, 6

*Eagle v. Fred Martin Motor Co.,*
    157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161 ................................. 1, 9, 10, 12

*Englert v. Nutritional Scis., LLC*,
    Franklin App. No. 07AP989, 2008-Ohio-5062 ................................................................ 7

*Garcia v. Wayne Homes, LLC,*
    (Apr. 19, 2002), Clark App. No. 2001CA53, 2002 WL 628619 ....................................... 5

*Green Tree Fin. Corp.-Ala. v. Randolph,*
    531 U.S. 79 (2000) ......................................................................................................... 10

*Green v. Ryan*,
    (1953), 95 Ohio App. 345, 119 N.E.2d 668 .............................................................. 10, 14

*Harris v. The DIRECTV Group, Inc.*,
    No. 07-C-3650, 2008 WL 342973 (N.D. Ill. Feb. 5, 2008) ............................................ 12

*Hawkins v. O'Brien*,
    Montgomery App. No. 22490, 2009-Ohio-60 ........................................................... passim

*Higgs v. Auto. Warranty Corp. of Am.*,
    134 Fed. Appx. 828 (6th Cir. May 13, 2005) ............................................................... 3, 7

*Howard v. Wells Fargo Minn., N.A.*,
    No. 1:06-CV-2821, 2007 WL 2778664 (N.D. Ohio Sept. 21, 2007) ............................... 10

*In re Early Cancellation Fee Litigation*,
    Case. No. 08-CV-741 AG (ANx) ................................................................................... 13

*Javitch v. First Union Secs., Inc.*,
    315 F.3d 619 (6th Cir. 2001) ........................................................................................... 2

*Liedtke v. Frank*,
No. 1:05-CV-2990, 2006 WL 625730 (N.D. Ohio Mar. 10, 2006) ................................ 3, 7

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ......................................................................................... 14

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*,
383 F.3d 512 (6th Cir. 2004) ........................................................................... 3

*Morrison v. Circuit City Stores, Inc.*,
317 F.3d 646 (6th Cir. 2003) ........................................................................... 12

*Nat'l Check Bureau v. Buerger*,
Lorain App. No. 06CA008882, 2006-Ohio-6673 ............................................. 15

*Price v. Taylor*,
575 F. Supp. 2d 845 (N.D. Ohio 2008) ........................................................... 11

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
388 U.S. 395 (1967) ..................................................................................... 2, 3, 5

*Schwartz v. Alltell Corp.*,
Cuyahoga App. No. 86810, 2006-Ohio-3353 .................................... 1, 9, 10, 12

*Seawright v. Am. Gen. Fin. Servs., Inc.*,
507 F.3d 967 (6th Cir. 2007) ........................................................................... 5

*Taylor Bldg. Corp. of Am. v. Benfield*,
117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12 .................................. 5, 6

*Vincent v. Neyer*,
 (2000), 139 Ohio App. 3d 848, 745 N.E.2d 1127 ........................................... 3

*Woods v. Oak Hill Cmty. Med. Ctr., Inc.*,
(1999), 134 Ohio App. 3d 261, 730 N.E.2d 1037 ........................................... 15

**Statutes**

9 U.S.C. § 2 ......................................................................................................... 4

9 U.S.C. § 3 ......................................................................................................... 16

9 U.S.C. § 4 ......................................................................................................... 16

**Other Authorities**

CLANCY & STEIN,
*An Uninvited Guest: Class Arbitration and the Federal Arbitration Act's
Legislative History*, 63 BUS. LAW. 55, 58-60 (2007) ................................... 13, 14

iii

## I.    INTRODUCTION

Plaintiffs Dolores Stachurski and Bob Kravos, Jr. ("Plaintiffs") opposed DIRECTV's motion to compel arbitration on grounds expressly rejected by Ohio courts.  This Court too should reject these arguments here, and compel arbitration pursuant to the parties' agreement.

First, Plaintiffs do not deny that they *received* the Customer Agreement, nor that it contains an arbitration provision.  Instead, they conclude without support that they can disregard their arbitration agreement because they never bothered to *read* it, and because it did not require a signature, but instead became effective when they continued to accept service after receiving it.  These arguments fail as a matter of law.  *See* Section II.A.

Second, relying heavily on *Eagle* and *Schwartz,* Plaintiffs then argue their arbitration agreement with DIRECTV is unconscionable under Ohio law.  Plaintiffs do not, however, cite the recent *Hawkins v. O'Brien* decision from the Ohio Court of Appeals, Montgomery App. No. 22490, 2009-Ohio-60, which expressly rejected the manner in which Plaintiffs read *Eagle* and *Schwartz*.  Instead, *Hawkins* confirms that, as DIRECTV explained in its opening brief, *Eagle* and *Schwartz* support enforcement of the arbitration agreement in this case.  Plaintiffs have not met their burden of proving that the arbitration agreement is procedurally or substantively unconscionable.  *See* Section II.B.

Finally, DIRECTV moved to dismiss Plaintiffs' declaratory relief and breach of contract claims because Plaintiffs' declaratory relief claim has matured into causes of action they are already asserting, and because Plaintiffs did not allege any contractual term that DIRECTV has supposedly breached.  Plaintiffs' Opposition does nothing to cure these deficiencies in the Complaint, and, therefore, the claims should be dismissed.  *See* Section III.

This Court should compel arbitration of this dispute in accordance with the FAA, Ohio law, and the parties' contractual agreement, and, alternatively, should dismiss Plaintiffs' breach of contract and declaratory relief claims.

## II.     THIS COURT SHOULD COMPEL ARBITRATION OF PLAINTIFFS' CLAIMS.

### A.     Plaintiffs Entered Into An Arbitration Agreement With DIRECTV When They Continued To Accept Service After Receiving The Customer Agreement.

Plaintiffs do not dispute that DIRECTV mailed and that they received the Customer Agreement containing the arbitration agreement on four separate occasions over the course of their four years as DIRECTV subscribers.  *See* McCarthy Decl. ¶¶ 5-6.  Nor do Plaintiffs dispute that the Customer Agreement between DIRECTV and Plaintiffs contains an arbitration provision.  *See* Ex. D, § 9.[1]  Although that should end the inquiry under the FAA as to whether an agreement to arbitrate this dispute exists (*Javitch v. First Union Secs., Inc.*, 315 F.3d 619, 624 (6th Cir. 2001)), DIRECTV below addresses Plaintiffs' unsupported arguments related to the validity of the Customer Agreement as a whole.

Plaintiffs insist as a "preliminary matter" that this Court must first rule on the "viability of the Customer Agreement ***as a contract***."  Opposition Brief ("Opp.") at 1-2 (emphasis in original).  Plaintiffs' proposed approach contravenes the one set forth by the United States Supreme Court in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967).  In *Prima Paint*, the Supreme Court held that courts deciding motions to compel arbitration may *only* consider arguments as to the enforceability of the arbitration clause itself, and that challenges to the validity of the contract as a whole must go to the arbitrator.  *Id.* at 403-04; *see*

---

[1] Unless otherwise stated, all exhibits cited in this brief refer to those exhibits attached to the Declaration of Valerie McCarthy, filed in support of DIRECTV's Opening Brief.

also *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Kean-Argovitz Resorts*, 383

F.3d 512, 515 (6th Cir. 2004) (under *Prima Paint*, "district courts may consider only claims

considering the validity of the arbitration clause itself, as opposed to challenges to the validity of

the contract as a whole.").  Therefore, Plaintiffs' challenge to the validity of the arbitration

agreement by attacking the enforceability of the entire Customer Agreement is not properly for

this Court's consideration.  *Id.*

Plaintiffs' arguments against enforceability of the Customer Agreement fail in any event.

Plaintiffs assert that they are not bound to arbitrate because they never bothered to *read* the

Customer Agreement after receiving it.  Opp. at 4-5.  But just because Plaintiffs decided not to

read the Customer Agreement does not mean they can now claim they received DIRECTV

service for four years without being bound by any terms and conditions.  Plaintiffs' DIRECTV

service has always been governed by the Customer Agreement, including the arbitration clause.

*See Vincent v. Neyer* (2000), 139 Ohio App. 3d 848, 855-56, 745 N.E.2d 1127 (enforcing

arbitration provision where consumers failed to read entire contract and were unaware that it

contained an arbitration clause).

Plaintiffs also complain about the lack of a signature line on the Customer Agreement.

Opp. at 13.  But they do not dispute (or even mention) the authority DIRECTV cited in its

opening brief recognizing that an agreement may become effective when a customer—instead of

signing it—continues to accept services after receiving the agreement.  *See* Opening Brief ("Op.

Br.") at 6 (citing *Liedtke v. Frank*, No. 1:05-CV-2990, 2006 WL 625730, at *4-5 (N.D. Ohio

Mar. 10, 2006) (continued use of services after receiving contract manifested assent to be bound

by the contract terms, including arbitration provision); *Higgs v. Auto. Warranty Corp. of Am.*,

134 Fed. Appx. 828, 831 (6th Cir. May 13, 2005) (enforcing arbitration provision in a service

warranty contract sent to plaintiff on the ground that plaintiff assented to its terms by keeping the warranty)).  Nor do Plaintiffs affirmatively cite any case that suggests that not signing the Customer Agreement somehow relieves them of being bound by any terms and conditions in connection with their DIRECTV service.

This Court, therefore, should conclude, consistent with the controlling authorities, that Plaintiffs entered into the Customer Agreement, and the arbitration provision, with DIRECTV.

**B.     The Parties' Arbitration Agreement Is Not Unconscionable Under Ohio Law.**

Because DIRECTV has established the existence of an agreement to arbitrate,[2] the Court should compel arbitration unless it finds that Plaintiffs have established that the provision is unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract." *See* 9 U.S.C. § 2.  Plaintiffs argue that the arbitration agreement is unconscionable under Ohio law, and concede it is *their burden* to demonstrate that the arbitration agreement is *both* procedurally and substantively unconscionable.  Opp. at 7 (citing *Collins v. Click Camera & Video, Inc.* (1993), 86 Ohio App. 3d 826, 834, 621 N.E.2d 1294).  Plaintiffs' futile attempt to make that showing ignores controlling authority, including *Hawkins v. O'Brien*, that directly contradicts their arguments.  As discussed below, Plaintiffs establish neither procedural nor substantive unconscionability in this case.

**1.     The arbitration agreement is not procedurally unconscionable.**

Plaintiffs' arguments regarding procedural unconscionability ignore the recent *Hawkins* case, the cases DIRECTV cited in its opening brief, and other authority establishing that the

---

[2] Plaintiffs do not dispute that their claims come within the scope of the arbitration agreement, so DIRECTV will not revisit those points here.  *See* Op. Br. at 7-8.

Customer Agreement here is not procedurally unconscionable.[3]

First, the fact that a contract is in a pre-printed, standardized "form" does not make it unconscionable under Ohio law.  *See Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St. 3d 352, 2008-Ohio-938, 884 N.E.2d 12, at ¶¶ 46, 50 (finding no procedural unconscionability and noting that "so-called 'form contracts' can provide advantages to consumers" by reducing transaction costs and lowering prices); *see also Hawkins* at ¶ 25.  Moreover, the fact that Plaintiffs did not sign the arbitration clause does not, as they claim, make "the nature of the adhesion contract [ ] even more egregious."  Opp. at 13.  To the contrary, an arbitration agreement need not be signed.  *See Garcia v. Wayne Homes, LLC* (Apr. 19, 2002), Clark App. No. 2001CA53, 2002 WL 628619, at *8 ("Courts have consistently held that to enforce an arbitration clause it is only necessary that the provision be in writing and a party's agreement to the provision need not be evidenced by the signature of the party to be charged."); *see also Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 974-79 (6th Cir. 2007) (enforcing arbitration agreement that became binding when employee continued employment after receiving notice of the arbitration clause, and noting that the FAA does not require that an arbitration clause be signed to be enforceable, just that it be written).

Second, Plaintiffs' argument that DIRECTV and Plaintiffs were in an unequal bargaining position does not mean the arbitration agreement is procedurally unconscionable.  *See* Opp. at 12-13.  Where there is an imbalance in bargaining power, a contract is not procedurally unconscionable unless, "in consequence of the imbalance, the party in the weaker position was

---

[3] DIRECTV notes that Plaintiffs' procedural unconscionability arguments challenge the Customer Agreement as a whole, and therefore should not be considered by this Court.  *See* Section II.A.; *Prima Paint Corp.*, 388 U.S. at 403-04.  DIRECTV nevertheless disposes of each argument in Section II.B.1.

defrauded or coerced into agreement to the arbitration clause." *Hawkins* at ¶ 24.  Plaintiffs were in no way "defrauded or coerced" into accepting the arbitration agreement; nor do they argue or plead that they were.  They had the opportunity to review the terms of the arbitration agreement, which were not hidden from them, and could have canceled their service if they decided they did not want to agree to arbitrate disputes.  *See* Ex. A, Introduction ("**THIS DOCUMENT DESCRIBES THE TERMS AND CONDITIONS REGARDING YOUR RECEIPT AND PAYMENT OF DIRECTV® SERVICE . . . IF YOU DO NOT ACCEPT THESE TERMS, PLEASE NOTIFY US IMMEDIATELY AND WE WILL CANCEL YOUR SERVICE.  IF YOU INSTEAD DECIDE TO RECEIVE OUR SERVICE, IT WILL MEAN THAT YOU ACCEPT THESE TERMS AND, ACCORDINGLY, THEY WILL BE LEGALLY BINDING ON YOU.**") (emphasis in original).

Moreover, multi-channel television services are not a necessity, and DIRECTV is not the only provider from whom Plaintiffs could have received those services.  *Collins*, 86 Ohio App. 3d at 836 (finding no procedural unconscionability where plaintiff could have taken his business elsewhere if he did not like the contract terms).  Nor does Plaintiffs' decision not to seek legal counsel when they began subscribing to DIRECTV's services render the parties' arbitration agreement procedurally unconscionable.  *See Taylor Bldg.* at ¶ 46 (finding no procedural unconscionability where nothing kept plaintiffs from consulting an attorney about contract terms if they wanted to do so).  Consistent with on-point authority such as *Taylor*, *Hawkins*, and *Collins* (none addressed by Plaintiffs), any imbalance in bargaining power between Plaintiffs and DIRECTV did not make the arbitration agreement procedurally unconscionable.

Third, the arbitration agreement in this case was not hidden in small print as Plaintiffs suggest (Opp. at 12-13), but has always been set off in its own section under the capitalized,

6

bolded, stand-alone heading "**RESOLVING DISPUTES**," and emphasizes in the same, capitalized, bolded print that "**ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JURY TRIAL**." *See* Exs. A § 8(b), B § 9(b), C § 9(b), D § 9(b). *See also Hawkins* at ¶¶ 22-23 (finding no procedural unconscionability even where arbitration agreement appeared on the back page of contract, and holding that the defendant company "had no such independent duty to point out or explain the arbitration clause" to the plaintiff before the contract was formed). Plaintiffs had the opportunity to read and reject the arbitration agreement here, but instead chose to accept DIRECTV's programming services.

Fourth, Plaintiffs' complaint that DIRECTV mailed them the Customer Agreement after they activated service is irrelevant. The Customer Agreement containing the arbitration clause was available for Plaintiffs' review on DIRECTV's website before, during and after Plaintiffs first signed up for DIRECTV's services. McCarthy Decl. ¶ 3. Even if Plaintiffs did not view DIRECTV's website, agreements that become effective when a customer chooses to continue accepting service after receiving the agreement are binding under Ohio law. *See Liedtke*, 2006 WL 625730, at *4-5); *Higgs*, 134 Fed. Appx. at 832. The arbitration provision therefore properly became binding when Plaintiffs opted to continue receiving service instead of canceling their subscription.

Finally, DIRECTV's ability to send updated Customer Agreements which Plaintiffs would accept in the same manner—by continuing to receive service—also does not mean the arbitration agreement is procedurally unconscionable. *See Englert v. Nutritional Scis., LLC*, Franklin App. No. 07AP989, 2008-Ohio-5062, at ¶ 19 (holding that clause reserving the right to unilaterally amend contract was valid where it was unambiguously disclosed, and the other party had notice and accepted the risk involved by entering the contract). Here, the Customer

Agreement specifically disclosed the procedure by which the parties' contract could be amended. Ex. A, § 4 ("**CHANGES IN CONTRACT TERMS**") (emphasis in original). And, in any event, Plaintiffs do not identify any particular change to their original contract that causes them any concern, rendering their complaint about this provision inconsequential to the Court's analysis here. Plaintiffs had notice that they could reject the Customer Agreement or any updated terms by canceling service after receiving the agreement, but they decided instead to continue receiving service and accept the terms and conditions, including the arbitration agreement.

Plaintiffs' agreement to arbitrate disputes with DIRECTV is not procedurally unconscionable. Because both procedural and substantive unconscionability are required to invalidate the arbitration agreement, this Court should enforce the agreement without further inquiry. DIRECTV nevertheless addresses Plaintiffs' substantive unconscionability arguments below.

### 2. The arbitration agreement is not substantively unconscionable.

Plaintiffs' substantive unconscionability arguments have no support under Ohio law, and instead have been largely rejected by Ohio courts because, although Plaintiffs cannot bring a class action in arbitration, they do not lose any substantive right by arbitrating this dispute.

### a. The parties' agreement to waive class action procedures does not render the arbitration clause substantively unconscionable.

The *Hawkins v. O'Brien* case directly undercuts Plaintiffs' substantive unconscionability arguments. *Hawkins* involved claims brought by a consumer against a "payday lender" and its attorney, for alleged violations of the Ohio Consumer Sales Practices Act ("CSPA") and federal lending statutes. *Hawkins* at ¶ 5. The trial court enforced the parties' arbitration agreement, which contained a class action waiver. *Id*. at ¶¶ 6-7. Hawkins appealed the trial court's order

compelling arbitration, and made substantially the same unconscionability and public policy arguments that Plaintiffs make here. *Id*. at ¶ 22 (arguing the arbitration clause was on the back of the agreement, was never shown to the plaintiff, that the parties were in unequal bargaining positions, and that the contract was a form, adhesion contract offered on a "Take it or leave it" basis); ¶ 29 (arguing the arbitration clause was against public policy because it waived the plaintiff's right to proceed as a private attorney general or as a class action). But the *Hawkins* court rejected those arguments and enforced the parties' arbitration agreement, finding no procedural or substantive unconscionability, nor any violation of Ohio public policy. *Id.* at ¶¶ 23-25 (holding that parties' unequal bargaining positions, the adhesionary nature of contract, and not pointing out arbitration clause to customer who "can read and is not prevented from reading," did not collectively render arbitration agreement procedurally unconscionable); ¶ 34 (holding that "the arbitration clause in the contract between Hawkins and Kentucky Check is enforceable" because it only waives "procedural mechanisms" and "preserves the statutory substantive rights and remedies" sought by the plaintiff). Consistent with *Hawkins*, and as discussed in more detail below, Plaintiffs' agreement to individually arbitrate disputes with DIRECTV is not substantively unconscionable.

Plaintiffs claim arbitration agreements that waive class action procedures "frustrate the purposes of CSPA" and are thus substantively unconscionable and unenforceable. Opp. at 8-10. To support this theory, Plaintiffs rely exclusively on *Schwartz* and *Eagle*, and never mention *Hawkins*. However, neither *Schwartz* nor *Eagle* invalidated an arbitration provision because of the class action waiver alone. *Schwartz* based its finding of unenforceability on the fact that the arbitration agreement with the class action waiver was coupled with a prohibition on recovery of statutorily authorized attorneys fees. *See Schwartz v. Alltell Corp.,* Cuyahoga App. No. 86810,

9

2006-Ohio-3353 at ¶ 29.  Similarly, the court in *Eagle* found the arbitration clause substantively unconscionable based *solely* on the undisclosed and extremely high costs—thousands of dollars—associated with initiating a claim in arbitration.  *See Eagle v. Fred Martin Motor Co.,* 157 Ohio App. 3d 150, 2004-Ohio-829, 809 N.E.2d 1161 at ¶¶ 37-51.  The *Eagle* court later noted that the secrecy clause, class action waiver, and private attorney general waiver in the arbitration provision added to the substantive unconscionability of the provision, but did not rely on these factors in reaching its decision.  *Id.* at ¶ 73-74.  Consistent with DIRECTV's arguments in its opening brief, *Hawkins* rejected the argument that *Eagle* stands for the proposition that a class action waiver alone renders an arbitration clause unenforceable, either for substantive unconscionability or public policy.  *Hawkins* at ¶¶ 31, 34 (noting that, in addition to the class action waiver, "the arbitration clause in *Eagle* contained restrictions against proceeding as a private attorney general and also imposed a confidentiality requirement").

Hawkins also clarifies the proper application of the Supreme Court holding in *Green Tree Fin. Corp.-Ala. v. Randolph*, that "'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum,' the (remedial) statute serves its functions."  *Hawkins* at ¶ 32 (quoting *Green Tree*, 531 U.S. 79, 90 (2000), which was relied on by *Eagle*).  *Hawkins* rightly points out that a class action waiver is not a substantive right, but merely a "procedural mechanism that aid[s] consumers in their prosecution of CSPA violations." *Hawkins* at ¶ 34.  Therefore, class action waivers do not thwart the remedial purposes of the CSPA where the same statutory remedies are available to the claimant in arbitration as they would be in court.  *Id.*; *see also Howard v. Wells Fargo Minn., N.A.*, No. 1:06-CV-2821, 2007 WL 2778664, at *4 (N.D. Ohio Sept. 21, 2007) (holding that class action waiver did not deprive plaintiff of her statutory remedies, but "only limited [] the forum in which she may establish her

right to relief"); *Price v. Taylor*, 575 F. Supp. 2d 845, 854-55 (N.D. Ohio 2008) (enforcing class action waiver because "[a]n agreement does not violate a plaintiff's rights merely because it precludes a limited number of remedies," and because plaintiff failed to identify any statutory remedies unavailable to her in arbitration).

Here, the parties' arbitration agreement does not prohibit statutorily authorized attorneys' fees, does not contain a secrecy provision, and does not limit the remedies that would otherwise be available in court. *See* Ex. D. The arbitration agreement, including the waiver of class procedures, is therefore not substantively unconscionable under Ohio law because it does not frustrate the purpose of the CSPA nor deprive the Plaintiffs of any substantive right or remedy.

### b.      Arbitration is not cost-prohibitive.

Plaintiffs next assert that the arbitration provision at issue is substantively unconscionable because it is cost-prohibitive. Opp. at 11. Under the arbitration agreement, Plaintiffs are responsible for a maximum $125 filing fee, *if that*,[4] and DIRECTV pays all the other costs of arbitration. *See* Ex. D, § 9(b). Plaintiffs decry the hardship of expending $125 "upfront" (Opp. at 11) to initiate arbitration, but do not mention in comparison that the cost of initiating a new civil action in the Northern District of Ohio is nearly triple that amount, at $350. *See* United States District Court Northern District of Ohio,

---

[4] As Plaintiffs noted with invective, DIRECTV offered to pay Plaintiffs' arbitration initiation fee, leaving Plaintiffs with no costs to initiate arbitration. *See* Dailey Declaration filed in support of Opp., Ex. 1. Plaintiffs' argument that DIRECTV's offer was an "unconscionable" attempt to "pick off" lead plaintiffs and defeat class standing, disingenuously takes issue with the fact that the arbitration agreement is written in terms that weigh in favor of the customer, making it very simple for customers to arbitrate against DIRECTV. Ex. D, § 9(b). The arbitration is to take place near the customer's home, is governed by the customer's home state laws, and not only is the amount required to initiate arbitration limited to $125, but the agreement also contemplates that DIRECTV will pay this fee. *Id*. ("*Unless we agree to pay your fee for you*, you only need to pay an arbitration initiation fee equal to such court filing fee, not to exceed $125.") (emphasis added).

11

http://www.ohnd.uscourts.gov/Clerk_s_Office/Fee_Schedule/fee_schedule.html (last visited

Mar. 11, 2009).

Plaintiffs also cite *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 663 (6th Cir.

2003), to argue that, in determining whether arbitration costs will unconscionably deter claimants

from bringing claims, courts should not consider the fact that the claimant may be able to

statutorily recover costs and fees upon winning in arbitration.  Opp. at 11.  But the Sixth

Circuit's test requires analyzing "whether the 'overall cost of arbitration,' from the perspective of

the potential litigant, is greater than 'the cost of litigation in court.'"  *Morrison*, 317 F.3d at 663.

Applied here, the only specifics Plaintiffs cite in support of their claim that arbitration would be

prohibitively expensive are the $125 initiation fee and the time and expense of participating in

arbitration.  Opp. at 11-12.  Given that Plaintiffs' expenditure of both time and money would be

greater in litigation than in arbitration, Plaintiffs have not met their burden of establishing "the

likelihood that 'arbitration would be prohibitively expensive'" as compared to the alternative of

litigation.  *Burden v. Check Into Cash of Ky.*, LLC, 267 F.3d 483, 492 (6th Cir. 2001); *see also*

*Harris v. The DIRECTV Group, Inc.*, No. 07-C-3650, 2008 WL 342973, at *4 (N.D. Ill. Feb. 5,

2008) (holding that DIRECTV's class action waiver did not prevent plaintiff from vindicating

his rights where damages at issue were $100-$1000).

> **c.    DIRECTV's arbitration agreement does not prevent litigants from bringing class actions in jurisdictions, unlike Ohio, that do not enforce the class action waiver.**

Finally, Plaintiffs argue that the non-severability (per Plaintiffs, "blow-up") clause in the

parties' arbitration agreement elevates the agreement to a new height of substantive

unconscionability—one supposedly "more severe" than the offending provisions in *Eagle* and

*Schwartz* (which, respectively, contained a secrecy provision and a prohibition on recovering

attorneys' fees, neither of which is present here).  Opp. at 9.  But Plaintiffs do not—in fact, cannot—cite a single case to support this argument.[5]

Instead of citing any authority, Plaintiffs "infer" that DIRECTV designed its arbitration agreement only as a means "to ensure that private litigants cannot use the class mechanism." Opp. at 9.  Plaintiffs' bald and unsupported speculation is improper.  The arbitration clause in the DIRECTV Customer Agreement does not prevent private litigants from bringing class actions in jurisdictions where—unlike in Ohio—the class action waiver would not be enforced.  *See* Ex. D § 9(c).  Indeed, in a similar putative class action pending in the Central District of California, DIRECTV has not moved to compel arbitration of the California plaintiffs' claims.  *See In re Early Cancellation Fee Litigation*, Case. No. 08-CV-741 AG (ANx) (filed July 7, 2008).  The arbitration agreement only precludes class actions in arbitration.

The rationale for permitting individual, but not class, arbitration is legitimate and unsurprising.  The strong federal policy promoting arbitration is based in part on the fact that arbitration is a valuable alternative to litigation by being "prompt, inexpensive, and streamlined," and by providing participants with a more informal "face to face" dispute resolution process. CLANCY & STEIN, *An Uninvited Guest: Class Arbitration and the Federal Arbitration Act's Legislative History*, 63 BUS. LAW. 55, 58-60 (2007).  Class arbitration, on the other hand, is too complex and impersonal to achieve any of these benefits.  *Id* at 62-64.  Limiting class

---

[5]  In fact, there does not seem to be any authority, in any jurisdiction, that considers non-severability clauses in determining whether an arbitration agreement is substantively unconscionable.  Even in minority jurisdictions such as California and Washington where, unlike Ohio, class action waivers are often unenforceable, non-severability clauses are enforced and not cited as evidence of an insincere interest in arbitration.  *See, e.g.*, *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1219 (9th Cir. 2008) (finding class action waiver invalid under Washington law, and enforcing non-severability clause); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 986-87 (9th Cir. 2007) (finding class action waiver unenforceable under California law, and enforcing non-severability clause to invalidate the entire arbitration agreement).

proceedings to a courtroom, and resolving individual actions in arbitration, is reasonable, "given the breadth, the stakes, the complexity" of putative class action lawsuits.  *Id.* at 56.  Plaintiffs have not provided any support for the notion that the non-severability clause in the parties' arbitration agreement renders it substantively unconscionable.

Plaintiffs entered into an agreement containing an arbitration clause that governs this dispute.  Because that arbitration clause is neither procedurally nor substantively unconscionable, and consistent with the controlling Ohio authorities, this Court should grant DIRECTV's motion and compel this dispute to arbitration in accordance with the parties' agreement.

## III.    IN THE ALTERNATIVE, THIS COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR DECLARATORY RELIEF AND BREACH OF CONTRACT FOR FAILURE TO STATE CLAIMS.

### A.    Plaintiffs Have Not Stated A Claim For Declaratory Relief.

Declaratory relief is not a proper remedy where the claimant seeks "present relief based on alleged matured existing rights."  *Green v. Ryan* (1953), 95 Ohio App. 345, 348-49, 119 N.E.2d 668.  Here, Plaintiffs seek declaratory relief on matters that have ripened into mature causes of actions for alleged violations of the DTPA and CSPA, Unlawful Assessment of Liquidated Damages, and Unjust Enrichment—in fact, Plaintiffs have asserted claims under each of these categories.  A declaratory relief claim therefore is unnecessary and improper.

Plaintiffs argue for keeping their declaratory relief claim because "customers who have not yet been assessed the fees will be relieved of the threat of that penalty should they choose to cancel their service."  Opp. at 16.  But Plaintiffs cannot save their claims for declaratory relief based on how the proposed declaration could theoretically benefit putative class members who would not have standing to bring any claims on their own.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992) (requiring injury in fact that is "concrete and particularized" and not "conjectural" or "hypothetical"); *see also Woods v. Oak Hill Cmty. Med. Ctr., Inc.* (1999),

134 Ohio App. 3d 261, 269, 730 N.E.2d 1037.  The customers Plaintiffs propose to protect with their declaratory relief claim have suffered no injury.  The Court should therefore dismiss Plaintiffs' claims for declaratory relief for failure to state claims under Federal Rule of Civil Procedure 12(b)(6).

### B.      Plaintiffs Have Not Stated A Claim For Breach Of Contract.

DIRECTV is still without notice as to the basic grounds upon which Plaintiffs' claim for breach of contract rests.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).  DIRECTV agrees with Plaintiffs—they just need to present a "short and plain statement of the claim" showing that they are entitled to relief.  Opp. at 17.  But Plaintiffs have not met even this minimal pleading requirement.  They have not identified "the terms of the contract" they claim is at issue here, as required in Ohio.  *Nat'l Check Bureau v. Buerger*, Lorain App. No. 06CA008882, 2006-Ohio-6673, at ¶ 17.  Instead, they identify a single term—a promise by DIRECTV to provide Plaintiffs service for a "set monthly fee"—that they assert was part of the parties' contract, if indeed a valid contract exists at all.  Opp. at 18.  However, Plaintiffs never allege DIRECTV breached the one contract term they identify.  Instead, they allege that DIRECTV wrongfully charged them early cancellation fees "*in addition to* those as agreed to and required by the terms of their contract."  *Id*. (emphasis added).  Plaintiffs' allegation is not a "breach of contract"; instead they allege (albeit incorrectly) that DIRECTV has acted completely outside the bounds of whatever contract Plaintiffs claim may have existed between the parties.  Such a claim may be brought, for example, under consumer protection statutes such as the CSPA.  Plaintiffs, however, have not adequately alleged a breach of contract claim, and this Court should therefore dismiss the claim with prejudice.

**IV.    CONCLUSION**

Plaintiffs agreed to arbitrate disputes like this one with DIRECTV.  Therefore, under Sections 3 and 4 of the FAA, the Court should dismiss or stay this case and compel arbitration in accordance with the parties' agreement.  Alternatively, the Court should dismiss Plaintiffs' claims for declaratory relief and breach of contract for failure to state claims under Rule 12(b)(6).

Respectfully Submitted,

/s/  Robyn E. Bladow
MELISSA D. INGALLS (Cal. Bar No. 174861)
ROBYN E. BLADOW (Cal. Bar No. 205189)
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Los Angeles, CA 90017
(213) 680-8400 (tel)
(213) 680-8500 (fax)
mingalls@kirkland.com
rbladow@kirkland.com

JAMES F. LANG (0059668)
PETER A. ROSATO (0068026)
FRITZ E. BERCKMUELLER (0081530)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
(216) 622-8200 (tel)
(216) 241-0816 (fax)
jlang@calfee.com
prosato@calfee.com
fberckmueller@calfee.com

Attorneys for Defendant DIRECTV, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2009, a copy of the *Reply Memorandum In Support Of DIRECTV's Motion To Dismiss Or Stay Proceedings Pending Arbitration And To Compel Arbitration, Or, In The Alternative, To Dismiss Plaintiffs' Claims For Declaratory Judgment And Breach Of Contract Pursuant To Federal Rule Of Civil Procedure 12(b)(6)* was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular United States First Class mail.  Parties may access this filing through the Court's system.

Respectfully Submitted,

/s/     Robyn E. Bladow
MELISSA D. INGALLS (Cal. Bar No. 174861)
ROBYN E. BLADOW (Cal. Bar No. 205189)
*Admitted Pro Hac Vice*
KIRKLAND & ELLIS LLP
777 S. Figueroa Street
Los Angeles, CA 90017
(213) 680-8400 (tel)
(213) 680-8500 (fax)
mingalls@kirkland.com
rbladow@kirkland.com

JAMES F. LANG (Ohio Bar No. 0059668)
PETER A. ROSATO (Ohio Bar No. 0068026)
FRITZ E. BERCKMUELLER (Ohio Bar No. 0081530)
CALFEE, HALTER & GRISWOLD LLP
1400 KeyBank Center
800 Superior Avenue
Cleveland, OH 44114
(216) 622-8200 (tel)
(216) 241-0816 (fax)
jlang@calfee.com
prosato@calfee.com
fberckmueller@calfee.com

Attorneys for Defendant DIRECTV, Inc.

17